MCGREGOR SCOTT
United States Attorney
MICHELLE RODRIGUEZ
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

FILED

MAY 10 2018



IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SARAH LARAY SANDOVAL,

Defendant.

CASE NO. 2:18-cr-00088-TLN

PLEA AGREEMENT

1. The Information in this case charges defendant Sandoval with violations of 18 U.S.C. § 2, 1341 (Mail Fraud - 6 Counts), 18 U.S.C. § 2, 1344(1) and (2) (Bank Fraud - 7 Counts), 18 U.S.C. § 1708 (Possession Of Stolen U.S. Mail), 18 U.S.C. § 1028A(a)(1) (Aggravated I.D. Theft - 2 Counts), and 18 U.S.C. § 2, 1029(a)(3) (Possession of Fifteen or More Access). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

2. The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant, including activities which may not have been

Plea Agreement (Sandoval)                                                                                                        1

charged in the Information. The Court is under no obligation to accept any recommendation or stipulation made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including any statutory maximum stated in this plea agreement.

3. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw her guilty pleas, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

4. The defendant will plead guilty as follows:

| Count | Offense | Description |
|---|---|---|
| 7,8,10 | 18 U.S.C. § 1344(1) and (2) | Bank Fraud |
| 15 | 18 U.S.C. § 1028A(a)(1) | Aggravated I.D. Theft |

The defendant agrees to forfeit to the United States and or its designee any and all seized items (specifically including all items seized on 6/2/17 by any and all seizing agencies). She agrees such forfeiture shall be effective immediately after sentencing and as may be ordered by the district court at sentencing. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate. The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her pleas should the Court not follow sentencing recommendations or stipulations, if any, contained herein. The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement and proceeds to trial. The defendant waives rights to further discovery, if any, and waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this plea agreement generally. The defendant acknowledges that she shall remain remanded into federal custody after the entry of her pleas.

5. The defendant agrees that her conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected

by her offenses, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for all offenses charged and relevant conduct. The defendant understands that the factual basis of this plea agreement binds only the United States Attorney's Office for the Eastern District of California in this criminal case, and does not bind any agency of the United States in any other judicial, administrative, or other proceeding. The defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

6. The defendant agrees to pay any fine imposed by the district court and she shall pay a special assessment of $100 per count at the time of sentencing by delivering a check or money order (payable to the United States District Court) to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

7. If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any "post-plea" conduct by a defendant constituting obstruction of justice, including lying or making false statements to the US Probation Office, will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement will be under a probable cause standard.

8. If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea, the government shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has

knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

9. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts / charges including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts / charges that were not time-barred as of the date of this plea agreement.

10. In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, even if the defendant later withdrew her guilty pleas, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

11. The defendant agrees to forfeit to the United States voluntarily and immediately all of her right, title, and interest to any and all seized items (specifically including all items seized on 6/2/17 by any and all seizing agencies). The defendant agrees to fully assist the government in the forfeiture of the seized items and to take whatever steps are necessary to pass clear title to the United States. The defendant agrees not to file a claim to any of the seized and or forfeited property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive her right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

12. The defendant knowingly and voluntarily waives her right to a jury trial on the forfeiture of seized assets and items. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

13. Further, Sandoval agrees and admits that no pressure has been placed upon her by any person, official, or agency, that no threats have been made against her, and that she is pleading guilty freely and voluntarily. Specifically, defendant Sandoval agrees and admits that no pressure has been placed upon her concerning her plea by any co-defendant, co-conspirator, accomplice, and or aider and abettor involved in the underlying criminal conduct or by anyone, that no one has made threats against her concerning her plea. Sandoval agrees that she is pleading guilty for her own interests and independent of interests, whatever they may be, of any co-defendant, co-conspirator, accomplice, and or aider and abettor.

14. The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time.

15. The government agrees to move, at the conclusion of the sentencing hearing, to dismiss without prejudice remaining counts, if any, in the pending Information as against defendant Sandoval only. The government also agrees not to reinstate any dismissed count except if this agreement is voided. The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. §

3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding. If defendant Sandoval is found to have fully accepted responsibility and -2 (or -3) levels are recommended in the final probation report, then the United States and Sandoval -- as a joint stipulation and agreement -- agree to urge the Court at sentencing that Sandoval be sentenced at the low end of the applicable range found by the Court at sentencing. In this regard, Sandoval gives up and waives rights, if any, to seek -- at the sentencing hearing -- a lower sentence under 18 USC 3553 (variance) and or under other USSG provisions (including departures). In doing so, Sandoval understands that, in accord with Sandoval's waiver of rights to direct appeal and collateral attack, she waives rights to appeal and attack all district court sentencing decisions.

16. The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

17. **As to Counts 7, 8, and 10 (Bank Fraud),** the defendant agrees that, at trial, the United States would be required to prove beyond a reasonable doubt during the time charged the following.

1) In the EDCA, the defendant knowingly executed a scheme or plan to obtain money or property from financial institutions, as charged in the Information, by means of false or fraudulent pretenses, representations, or promises;
2) the defendant acted with specific intent to defraud such financial institutions;
3) the false pretenses, representations, or promises that the defendant made, or assisted others in making, were material;
4) the defendant placed the financial institutions at risk of civil liability or financial loss; and
5) the financial institutions were federally insured.

///

1 **As to Count 15 (Aggravated I.D. Theft)**, the defendant agrees that, at trial, the United States would be required to prove beyond a reasonable doubt during the time charged the following.

1) The defendant acted in the Eastern District of California;
2) By her actions, the defendant knowingly and intentionally possessed and used, without lawful authority, means of identification of another person; and
3) the possession and use of the means of identification was during and in relation to a felony bank fraud scheme to obtain money, goods, and services (by use of mail obtained by fraud and contents of such mail, to include unauthorized access devices and other negotiable items and i.d. information) from federally insured financial institutions by false pretenses, representations, and promises.

By her signature hereto, the defendant declares that she fully understands the nature and elements of the crimes charged in the Information to which she is pleading guilty, together with the possible defenses thereto, and she has discussed the felony offenses with her attorney. The defendant also understands: (a) the maximum penalties for her felony violations are as follows:

| COUNTS | OFFENSE | MAXIMUM PENALTY DESCRIPTION |
|---|---|---|
| 7, 8, and 10 | 18 USC 1344(1)(2) | Bank Fraud<br>30 yrs imprisonment, 5 yrs TSR, $1,000,000 fine, restitution |
| 15 | 18 USC 1028A(a)(1) | Aggravated ID Theft<br>2 years (mandatory and minimum) consecutive imprisonment to any penalty for Counts 7, 8 and 10<br>1yr TSR, $250,000 fine; restitution |

(b) if the term of supervised release (TSR) for her convictions is revoked, a 3 year additional period of consecutive incarceration may be imposed; and (c) a mandatory $100 penalty assessment for each felony conviction will be imposed in addition to any penalty imposed by the Court. The defendant understands and agrees that any combination or all penalties/components of her sentence may be run additionally and consecutively by the Court, including, for example, that the 5 year term of supervised release shall follow the imposed period of incarceration and that the Court will be requested to make an order of restitution to identifiable victims.

18. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution, joint and several with co-defendants, for the full loss caused by the defendants' wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution

imposed by the Court.

19. The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Except as stipulated herein, the parties reserve all rights regarding application of the Sentencing Guidelines and sentencing factors under 18 U.S.C. § 3553. Under USSG 6B1.4, stipulations are not binding on the Court.

20. The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

21. The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose. Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete

waiver of all appellate rights. In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims. The government will move to dismiss counts against the defendant at the conclusion of the sentencing hearing. However, if the defendant ever attempts to vacate her plea(s), dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights to charge the defendant with any dismissed counts.

22. The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations, including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed.

23. The defendant understands that, before entering guilty plea(s) pursuant to this plea agreement, she could request DNA testing of evidence in this case. The defendant further understands that, with respect to the offense(s) to which she is pleading guilty pursuant to this plea agreement, she would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding her right to request DNA testing, the defendant knowingly and voluntarily gives up that right to test all items of evidence there may be in this case that might be amenable to DNA testing. The defendant understands and acknowledges that by giving up this right, she is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type. The defendant further understands and acknowledges that by giving up this right, she will never have another opportunity to have the evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offenses to which she is pleading guilty.

24. The defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. Removal

and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. The defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

25. Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

26. The defendant further agrees that she has been advised by her attorney of all her rights under the Federal Rules of Criminal Procedure, including FRCP 11 and 32, and all her rights under the U.S. Constitution. The defendant agrees that she fully understands those rights and that she is satisfied with her attorney's representation.

27. I, Sarah Laray Sandoval, have consulted with my attorney at great length, and I fully understand all my rights, including those rights contained in FRCP 11 and my constitutional rights, with respect to the offenses charged in the Information against me. I have read this plea agreement, including its incorporated Exhibit A, and I have carefully reviewed every part of it with my attorney. In signing this plea agreement, I was not under the influence of any disabling or mentally impairing drug, medication, liquor, intoxicant or depressant. Further, I was alert, attentive and fully capable of understanding the terms and conditions of this plea agreement. I understand the charges against me and the charges (by Information in Counts 7, 8, 10, and 15) to which I am pleading guilty. I agree that I be sentenced to a term of incarceration under the Sentencing Guidelines and 18 USC 3553 for my criminal conduct and to pay full restitution for all of my criminal conduct. I am fully satisfied with my attorney's representation. I understand this plea agreement, and I voluntarily agree to this written plea agreement. I understand that no other terms or oral agreements exist, other than what appears in this plea agreement.

Dated: 4/27/2018

Sarah Laray Sandoval
Defendant

28. I, AFD Noa Oren, am defendant Sandoval's attorney. I have fully explained to Ms. Sandoval the terms of this plea agreement and her rights with respect to all the charges against her and all potential charges against her. Ms. Sandoval wishes to plead guilty to the charges set forth in the Information in Counts 7,8,10 and 15. To my knowledge, Ms. Sandoval's decision to enter into this plea agreement is an informed and voluntary decision. Ms. Sandoval understands and agrees that she is guilty as charged in Counts 7,8,10 and 15. In signing this plea agreement, Ms. Sandoval did not appear to be under the influence of any disabling or mentally impairing drug, medication, liquor, intoxicant or depressant. Further, from what I could discern based on my extensive discussion and "question and answer" experiences with Ms. Sandoval regarding the Information, the statutory charges, and the plea agreement, I have reason to believe that, considering the mental state under which she signed this plea agreement, Ms. Sandoval was alert, attentive and fully capable of understanding the terms and conditions of this plea agreement.

Dated: 4/27/2018

AFD Noa Oren, Esq
Attorney For Defendant

29. The undersigned Assistant United States Attorney hereby accepts and agrees to this plea agreement for the United States.

Dated: May 10, 2018

McGregor W. Scott
United States Attorney

Michelle Rodriguez
Assistant U.S. Attorney

# EXHIBIT A (Plea Factual Basis)

30. The defendant, with the advice and assistance of her defense counsel, acknowledges and agrees that the following factual summary accurately describes the events underlying her criminal conduct and offenses of conviction.

1) From December 2016 through 6/2/17, Sandoval, working with persons known and unknown to the United States, obtained identity and financial information of others from stolen property and U.S. Mail. Sandoval catalogued and helped catalogue and create profiles for unauthorized use of the stolen property and stolen mail contents. Sandoval and her associates targeted certain postal customers and property theft victims for identity theft (including victims Laura W., Lamoin S., Sara W., Mark K., Joshua D., Jason D., David M., Dorothy M., Buena S., Thomas M., and Rodney O.).

2) Following a plan to get money by false pretenses and representations, Sandoval used her position as a DMV employee to access the state of California's protected DMV computer database to research and further to obtain personal and confidential identification information of targeted postal customers and property theft victims (including victims Lamoin S., Richard S. and Pamela S. (parents of victim Rodney O.), and Mark K). Sandoval and her associates, aiding and abetting each other, then posed as victims to open bank and credit card accounts in the names of victims (including victims Lamoin S., Mark K., Sara W., Richard S., and Rodney O.). Also, after posing as victims and forging victim signatures (including victims Laura W., Lamoin S., Mark K., Jason D., David M., Dorothy M., Buena S., Thomas M., and Rodney O.), Sandoval and her associates deposited the forged and altered negotiable instruments into financial institution accounts in Sandoval's name and or into fraudulently opened (unauthorized) accounts in victim names (including Mark K. and Rodney O.). Sandoval caused financial institutions to send access devices and related items for unauthorized accounts to mailboxes under her control or to which she and her associates had access, including to Sandoval's own (Pintail Ct.) West Sacramento residence and to an Elk Grove mailbox.

3) Sandoval herself posed as identity theft victims on unauthorized accounts. Sandoval on different occasions deposited stolen and or altered checks into such unauthorized accounts. Sandoval -- through Sandoval's own bank accounts and through bank and or credit accounts opened without authorization in the name of identity theft victims -- made deposits of stolen, forged, and altered financial instruments, and made, and attempted to make, withdrawals of federally insured proceeds. For example, from 1/30/17 through 3/22/17, after obtaining stolen U.S. Mail of victim Sara W., Sandoval, working with associates, opened a Comenity Capital Bank line of credit for $3,000.00, and attempted to open a Comenity Capital Bank line of credit for additional $250.00, all via unauthorized use of victim Sara W.'s identity information.

4) Specifically, Sandoval -- using the identity of Sara W. (a mail theft victim) -- posed as Sara W. (and via associates as Sara W.'s husband/boyfriend) to obtain a line of credit (account ending 9766) from Comenity Capital Bank (Zales), then federally insured. In doing so, Sandoval and her associates used -- without authorization -- personal identification information of Sara W. Sandoval obtained a $3,000 federally insured line of credit via account ending 9766 by using without authorization mail theft victim Sara W.'s true name, SSN, and other personal i.d. information. On 2/21/17, Sandoval, again posing as victim Sara W., attempted to obtain another $250 line of credit from Comenity Capital Bank (Victoria's Secret), then federally insured, again using -- without authorization -- personal identification information of Sara W., including mail theft victim Sara W.'s true name, SSN, and other personal i.d. information.

5) On 2/18/17, Sandoval, working with associates, contacted Comenity Capital Bank (Zales) representatives regarding account ending 9766. The telephonic communication was recorded. Sandoval and her associates -- assuming the identity of Sara W. -- verified Sara W.'s personal identifying information (true name and SSN) as Sandoval's own information. On 3/22/17, Sandoval herself contacted a Comenity Capital Bank (Zales) representatives regarding unauthorized account

ending 9766. In the recorded call, Sandoval identified herself as Sara W. Sandoval, in the recorded call, posed as Sara W. and verified the unauthorized account number (ending 9766) as her own account. Sandoval claimed Sara W.'s full first and last name and Sara W.'s SSN as her own. Sandoval also falsely claimed Sara W.'s mailing address as coming back to her own (Sandoval's own) Pintail Ct. address and falsely her own phone number as Sara W.'s phone number. On 3/22/17, from the trash of Sandoval and her associate residing at Pintail Ct, law enforcement recovered, among other items, Sandoval's profiles containing personal and financial information of property and mail theft victims, including the true SSN of victim Sara W. On 6/2/17, during execution of the federal search warrant for Sandoval's Pintail Ct residence, law enforcement recovered an opened Comenity Capital Bank (Zales) letter related to account ending 9766. The letter was addressed to Sara W. at 2785 Pintail Ct, West Sacramento, CA. Moreover, Sandoval, working with her associates posed as Sara W. at Synchrony Bank (JC Penny), then federally insured, to obtain a line of credit and caused Synchrony Bank to send via U.S. Mail correspondence (related to the Synchrony Bank line of credit application) to an address under the control of Sandoval and her associates.

6) After researching DMV records on 1/30/17 relating to mail theft victim Lamoin S., Sandoval -- working with associates intending to steal identities to obtain cash under false pretenses -- opened a Wells Fargo Bank (WFB) line of credit for $15,000.00, account ending 1762, via unauthorized use of victim Lamoin S.' identity information. Sandoval and her associates thereafter deposited forged check #2229, drawn on the unauthorized victim WFB account ending 1762, into Sandoval's WFB account ending 9872 for theft of $1,500.00. Sandoval and her associates obtained the $15,000 line of credit via account ending 1762, by using mail theft victim Lamoin S.'s true name, SSN, DOB, and other personal i.d. information. Sandoval and her associates used the Pintail Ct residence as Lamoin S.' mailing/residence address for the unauthorized account (ending 1762). Pursuant to the fraudulent application, victim WFB sent via US Mail a credit card to Lamoin S. at the Pintail Ct. residence. On 3/22/17, from Sandoval's residence trash at Pintail Ct, law enforcement recovered, among other items, Sandoval and her associates' profiles containing personal and financial information of property and mail theft victims, including the contents of a WFB letter addressed to victim Lamoin S. Later, Sandoval via her associates posed as Lamoin S. at Citibank and Capital One Bank, each then federally insured, to obtain a line of credit and caused each financial institution to send via U.S. Mail correspondence (related to the unauthorized Citibank and Capital One Bank line of credit applications) to an address under the control of Sandoval and her associates.

7) After researching DMV records on 2/2/17 relating to mail theft victim Richard S., Sandoval, working with associates, opened a Comenity Capital Bank line of credit for $3500.00, attempted to open a Comenity Capital Bank line of credit for $150.00, and attempted to open a Comenity Capital Bank line of credit for additional $550.00, all via unauthorized use of victim Richard S.' identity information. After researching DMV records on 2/2/17 relating to victim Richard and Pamela S. (parents of victim Rodney O.), Sandoval, working with associates, also opened Bank of the West (BOW) account ending 4063 in the name of mail theft victim Rodney O., and thereafter deposited forged checks stolen from the U.S. Mail and withdrew and attempted to withdraw proceeds, all totaling at least 22,750.26. On 2/13/17, Sandoval, and her associates, posing as mail theft victim Rodney O., obtained a federally insured Bank of America (BofA) account, ending 7317, using -- without authorization – personal identification information of Rodney O., including Rodney O.'s true name and SSN. Sandoval and her associates then used their Elk Grove mailbox, No. 112-767, to receive mail for account ending 7317. Sandoval later used her residence for mail for the unauthorized account ending 7317. As a result of Sandoval's unauthorized opening of BofA account ending 7317, BofA issued and sent Rodney O. (at Mailbox 112-767) a debit card and pin number to access account ending 7317.

8) In about January 2017, U.S. Mail was reported stolen by Mark K. On 2/16/17, Sandoval used her access to the California DMV's records and protected database to research personal and identifying information on Mark K. After researching DMV records on 2/16/17 relating to mail theft victim Mark K., Sandoval, working with associates, opened WFB accounts ending 4938 and 2135, and thereafter made deposits including forged and altered checks, obtained cash including via wire transfers, and made charges totaling at least $4,171.45. On 3/30/17, Sandoval working with associates, while posing as mail theft victim Mark K., obtained a federally insured WFB checking

account, ending 4938, and a WFB savings account, ending 2135, all using -- without authorization -- personal identification information of Mark K., including Mark K's true name, SSN, DOB, and Driver's License number.

9) On 4/6/17, Sandoval, at the WFB branch located at 2140 Town Center Plaza, West Sacramento, Ca, deposited $25 further to activate the unauthorized WFB account, ending 4938, in the name of Mark K and deposited $25 further to activate the unauthorized WFB account, ending 2135, also in the name of Mark K. Law enforcement obtained good quality surveillance images of Sandoval at the WFB branch depositing cash to activate the unauthorized Mark K. online accounts

10) On 5/17/17, from Sandoval and her associates' Pintail Ct residence trash, law enforcement recovered U.S. Mail, including from Safe Credit Union and WFB addressed to victim Mark K. The letters were addressed to 2785 Pintail Ct, West Sacramento, CA. Moreover, at Comenity Capital Bank, then federally insured, Sandoval and her associates posed as Mark K. to obtain a line of credit and caused Comenity Capital Bank to send via U.S. Mail correspondence (related to the unauthorized Comenity Capital Bank credit application) to their Elk Grove Mailbox 112-767. On 6/2/17, during execution of the federal search warrant for the Pintail Ct residence, law enforcement recovered an opened torn correspondence addressed to Mark K. from WFB related to account ending 4938.

11) In February 2017, U.S. Mail, including personal identification information and financial and tax return information, was reported stolen by Joshua D. On 2/12/17, Joshua D.'s tax preparer, received an email from "Joshua" from email address joshpamdxxxxx@gmail.com requesting a change of bank account information for the tax refund deposit. Sandoval and her associates, purporting to be Joshua D. and Pamela D. (Joshua's spouse), provided an account under their control (BofI Federal Bank account number ending 6034), then federally insured, for the tax refund. From 2/12/17 through 5/27/17, after obtaining stolen US Mail of victim Joshua D. and Pamela D., Sandoval, working with associates, used identity and financial information to add victim Joshua D. to BofI Federal Bank account ending 6034 for unauthorized deposit of tax refunds of Joshua D. and Pamela D.

12) Beginning on or about 12/22/16 through 6/2/17, Sandoval and her associates possessed U.S. Mail, including of victims Richard S., Pamela S., Rodney O., Angie W., Hector M., Thanh N., Sean B., Vera J., Judith P., David M., Dorothy M., Araceli A., Debra B., Robert B., Arlan C., Cole G., Robert G., Karen G., Jacqueline H., Heath H., Janice M., Kaytee M., Robert M., Gabriel M., Neoma O., Ana V., D'nette W., Warren W., Karen H., Buena S., Last Day's Harvest M., Jim S., Laura W., and Jason D, which mail had been stolen from an authorized U.S. Mail receptacle. Sandoval knew the mail she and her associates possessed was stolen. Similarly, from about 12/22/16 through 6/2/17, Sandoval and her associates possessed over 15 access devices assigned to others by federally insured financial institutions. Sandoval and her associates possessed the devices for purposes of fraud and specifically to get cash at the expense of federally insured banks by conducting transactions in interstate commerce.

31. I, Sarah Laray Sandoval, have fully and carefully read Exhibit A, the above Factual Basis for Plea, and I agree that it is entirely true and accurate.

Dated: 4/27/2018

_____
Sarah Laray Sandoval, Defendant

32. I, Noa Oren, have read Exhibit A, the above Factual Basis for Plea, and agree that it is consistent with discovery, evidence provided for review, and other materials in this case.

Dated: 4/27/2018

_____
AFD Noa Oren, Esq, Defendant's Counsel